Thank you, counsel. Good morning. We regret having to once again do this by remote, but it keeps the docket flowing and our work gets done. And we appreciate your assistance in that regard. Mr. Dionne, when you're ready, we are. Good morning, Your Honor. Thank you. May it please the court, I'm Marshal Dionne on behalf of Brian Dorsey. This court should remand for an evidentiary hearing where Mr. Dorsey will show the trial counsel failed to investigate and present substantial skipper evidence of his good conduct during nearly two years of pretrial detention. The post-conviction counsel's failure to raise this claim satisfies Martinez and that Mr. Dorsey is entitled to habeas relief and a new sentencing hearing. Due to trial counsel's failure, the jury never heard from law enforcement and correctional officers, including a former elected county sheriff who would have testified Mr. Dorsey had no disciplinary issues or write-ups, followed every order, and most importantly, never posed a threat to correctional staff. It never heard about nor saw the voluminous records prior counsel failed to obtain or present corroborating his lack of disciplinary or behavioral violations during his pretrial detention. Showing he was assigned to an honorary counsel, counsel, what evidence, what evidence of future dangerousness did the prosecution present? Your Honor, the prosecution during the cross-examination of Mr. Dorsey, um, asked Mr. Dorsey about whether he was a football player and, um, had Mr. Dorsey tried to get Mr. Dorsey to admit that football is very violent. I understand that I've read that part. So what else? Uh, that's really, that's really all there is, Your Honor. But this claim is not, is not related to where in the prosecution's initial closing argument. Can you cite to a, an argument such as was made in Skipper, um, that, that flagged future dangerousness as an issue of either aggravation or mitigation? I can't, Your Honor, but Skipper is not about future dangerousness. Skipper is about mitigating evidence and the United States Supreme Court made clear in Skipper. Counsel, have you read the case? I have, Your Honor. Do I have, do I have to go to the discussion in both the dissent and both the majority and concurring opinions that emphasize the prosecutor's emphasis on future dangerousness in closing? No, Your Honor, that emphasis was about the due process element of the, of the opinion process of the eighth amendment. Part of the opinion, Your Honor, was that, um, adaptability to incarceration is straightforwardly mitigating evidence that's entitled to be presented under Lockett and Eddings. It's not a, it's not about future dangerousness. Um, and in, in, in our case, Mr. Dorsey's, um, trial counsel sought to establish that family members, they put on evidence of, um, coaches all to say that, uh, the crime was out of character for him. Now, the rebuttal to that, that the prosecution used was, well, everything that you said you're talking about is before he committed these horrible crimes. And so apparently it's, it's not out of, out of, uh, character for him. So what this evidence that, that the Skipper evidence does is it's, it shows post crime, it's forward looking and post crime because Mr. Dorsey was not addicted to drugs at the, when he was incarcerated, he was not on drugs. He wasn't dealing with those problems that in fact his, his behavior reverted to the behavior that the, the witnesses that the defense presented tried to show the defense theory of mitigation, um, by presenting this, this evidence of his adaptability to incarceration, which I think is critically important here. Well, it's also your opinion. It's also your opinion. I could, I could easily argue to the contrary. And the jury gets to make that decision, your honor. No, no, I know. No, I mean as a legal, as a legal matter, just like you're just like your interpretation of Skipper is nothing else but your interpretation. No, no, no court has ever, has ever sorted out Skipper in the way you just did. Uh, well, I think there are courts that have, that have done so your honor. Okay, so give me, give me, okay, wait, let's, let's stop. Give me the side. You're probably right. So Williams versus Taylor in Williams versus Taylor, part of the claim of ineffective assistance of counsel that the United States Supreme Court found. Wait, wait, did, did William cite Skipper? Williams discussed the fact that the trial lawyers never put on, uh, the evidence that, that Mr. Taylor... I'm talking about cases that interpreted Skipper in the way you're asserting. That, that the, that the emphasis on the prosecutor's closing was only in relation to the due process part of the case, particularly since the concurring justices said they would have ended the case with that on that point. Well, um, there isn't an eighth circuit case that finds ineffective assistance for fail, failing to develop and present, um, adjustment to incarceration evidence, but there is one in the third circuit, your honor. And, and it's... That interpret, that interpret Skipper. That, that's the response I'm looking for. Then go back to your argument. And the reason I'm, uh, the reason I'm citing Wharton versus Vaughn, your honor, is that it does in fact, uh, uh, discuss Skipper in, outside of the context of future dangerousness and there's, that's not a relevant circumstance under Pennsylvania law. And the third circuit discusses Skipper irrespective of any argument or, or, or characterization about the client's future dangerousness. But the United States Supreme Court has also said that future danger in a capital case is always, uh, uh, is always at issue. And it did so in Jurek versus Texas. So the Supreme Court recognizes that where a sentencer is making a sentencing determination and it's not just in capital cases. Anytime a sentencer is making a sentencing determination, the future dangerousness of the person being sentenced is at issue. It's, it's, it's part and parcel of the sentencing, the sentencing, uh, determination. Mr. Dian, the evidence that you're proposing from prison wasn't unequivocally positive for your client, was it? By and large, I believe that it was Judge Grunder. Um, the, the, the state goes to great lengths to try and, um, point out some, some, some evidence that it argues was not particularly helpful. I don't see exactly how asking, can I watch the Superbowl is, uh, is, is, is not good behavior. Uh, I don't see how asking whether not only his family, but if the families of other people could bring in board games to help pass the time. I don't see how that is, uh, is negative adjustment evidence. I agree with you, but there were others that he had difficulty with. Free time wasn't dependable on his assignments, was sluggish, had not expressed the need for self-improvement, defied authority and not accepted responsibility for his situation and was self-centered. What do you think of some of those? So the, that was a, that was a behavioral checklist that was, and there, there were several of them and they were done on a regular basis. And those answers to those questions were inconsistent throughout those checklists. If you look at those checklists, you'll see sometimes they answered the way that you suggested. Sometimes they didn't, they did not answer that way. They answered the other way. So if you have those checklists and you're looking at them and you want to find out what the truth is, then you go interview the people that, that, uh, that did the checklists, right? The correctional officers that prepared the checklists, but trial counsel didn't do that. Trial counsel didn't even have these records at his disposal. Um, and I don't know how you make a strategic decision about whether or not to present or not present evidence if you don't have it in your, in your possession. So here, what we have is a situation. Counsel, let me ask you this. In your, in your, uh, in Dorsey's request for a hearing in either the district court or the state courts, did, was there any, was there any submission by Dorsey as to discussions with counsel before trial about conduct in prison? There was not your honor. That's that's a pretty big omission, isn't it? Because I would expect, uh, experienced counsel in a death penalty case where the, where the client is facing a number of months in pre-trial detention to advise the client in so many words, be a good boy. Um, I would, I didn't, if, if, if there's no presentation to the contrary, I think it's fair to assume that, uh, well, I, I agree with you that counsel should do that. What we do know, we also assume the Supreme Court says, assume counsel were competent too. You're absolutely right. Your honor that, that, that you're absolutely right. That that's the presumption that's made, but that presumption is not rebuttable. And here's why you didn't rebut it. Wait, wait, this, this point, you didn't rebut it. Well, here's, here's why I think we did your honor. What we, what we got was we got, um, all of trial counsel's files and we looked through trial counsel's files to see whether trial counsel did or did not obtain Mr. Dorsey's correctional records. He did not. What trial counsel did obtain was 46 pages of medical records from the Missouri Department of Corrections for the time that Mr. Dorsey was in South Central Correctional Center during his pretrial detention. But there's nothing in trial counsel's files to suggest that they got any records from the Boone County Jail. There's nothing in trial counsel's files to suggest that they got anything from the Calloway County Jail. There's nothing in trial counsel's files to suggest that they got any behavioral or disciplinary records from the South Central Correctional Center. The only records that trial counsel obtained, um, were the, were Mr. Dorsey's medical records from the Missouri Department of Corrections. So while it's true that, that the law requires that there is a presumption of counsel's competence and that counsel's actions or inactions were reasonable, that presumption can be overcome. And in, in our case, it's overcome by the fact that trial counsel did not obtain Mr. Dorsey's disciplinary or behavioral records from the Missouri Department of Corrections. Did not know, for example, that Mr. Dorsey was on an honor unit. Did not know, for example, that Mr. Dorsey, uh, was cleared for and obtained a job while he was in pretrial detention at South Central Correctional Center. Counsel, let me tell, let me tell you what's bothering me and, and, uh, and you, you can give me your, your response as to why it's wrong. It seems to me that, that, uh, if there was such a discussion with Dorsey, be a good boy. And then there is careful monitoring of the prosecution's case, which presents no evidence of future dangerousness, uh, which suggests, strongly suggests that the coun, the counsel's advice to be a good boy was, was adhered to. And therefore it was, it was strategically reasonable to stick with the defense that was, the 10 witness defense that was prepared. I'm not sure that I heard a question, but let me try. No, I said respond. I told you what was bothering me and asked for your response. I understand. I apologize. I understand now. No, no, no apology. We're trying to get, get to the bottom of things. So the defense presentation was a, was a presentation that Mr. Dorsey's homicidal conduct was beyond, was outside of his normal character, that that's not the guy he, he ordinarily was. And, and they presented that by way of family members and former coaches, and friends, and there's nothing about his conduct after the homicide. And so, and I, and I mentioned this earlier, I don't want to beat a dead horse, but if you, if you, if you're, if that's your theory of defense that you want to show that this homicidal conduct was uncharacteristic and was aberrational, then the next step is, because you've got to assume that what the cross-examination of those witnesses is going to be as it was, was yeah, but then he went and committed these terrible homicides and, and robbed these people and raped his cousin. And so why isn't that his character? Why are, why do you say that his character is what it was before this? His character now is this. Counsel, I'd like to have you address some mitigation evidence that might be relevant here, and that is the testimony of the psychologist. It's my understanding that his testimony was that Dorsey had no underlying antisocial disorder and that his past problems with lying and stealing were due to drugs and alcohol. Why, why wouldn't that be forward-looking evidence that would be relevant to his ability to adjust to incarceration? It, it, it is. And so all of the more reason why, if you show the jury that if he doesn't have the problems with drugs and alcohol, which he would not have in an incarcerated setting, then his, his behavior without the drugs and alcohol would revert to the behavior that, that he exhibited before he had that terrible problem. And so it fits in perfectly. And indeed, Dr. Smith tried to, tried to, to explain to the jury that because of Mr. Dorsey's drug and alcohol problem, that that robbed him of the ability to deliberate in, in, I believe that the, that the, that the court got wrong what Missouri law is about deliberation. Um, but counsel, my point was that the jury did receive the sentence and it seems that it was relevant to his ability to adjust to incarceration. So it's arguably that there was evidence presented. Assuming that your honor's correct, which I think it sort of moves in that direction, but I don't think it's the same. If you have correctional officers and deputy sheriffs and elected sheriff who are saying what a paid psychologist for the defense is saying, that's an awful lot more credible than just hearing it. So, so this is, this is a, this is a, how much issue, not a, not a, not a none, none versus some, this is a, some, but not enough. That's consistent with the defense closing argument, which focused on the future, at least in part. It, but did not have the evidence to, to back up that argument. And that's the problem. There was readily available evidence that could have supported that argument. The Supreme court has said that a thorough mitigation investigation is absolutely necessary. In order to, to, to make strategic decisions and that you're, you can't make a strategic decision in the absence of doing the investigation. You're trying to basically an uncontested question though, the, the prosecution wasn't arguing future dangerousness as a reason for the, the sentence. Well, as I said earlier, indeed. And when, when the, when the district attorney cross-examined Mr. Dorsey, he did try and make a point of the fact that Mr. Dorsey would be violent and that Mr. Dorsey was capable of violence. And that, that whole cross-examination about Mr. Dorsey playing football was nothing more than to try and show that Mr. Dorsey was capable of violence. So as I understand it, you played nose guard for the Jefferson city Jays. Yes, sir. I played center for a different team, that middle of the line. That's a pretty violent place, isn't it? It's pretty rough. Yeah. You knock people down and they knock you down. Yes, sir. So this idea that you're not really capable of violence is not really true. You on occasion have been a very violent individual. I don't know how you can say that the prosecution wasn't making future dangerousness an issue. Counselor, you think the jury needed that cross-examination from that, for that point? Don't you think maybe, maybe the facts of the offense were so obvious that, that, you know, the, the capable of violence was obvious. I think that cross-examination was addressed to the point being made in the, in the defense presented. Precisely my point, your honor. I agree with you. It was precisely to rebut the good character evidence that the defense presented as its central theory of mitigation. And so the way to rebut that cross-examination and the way to rebut the prosecutor saying, but you are violent, is to show that when he's not under the influence of drugs and alcohol, he's not. And the way to show that is by showing that in the incarcerated setting, where he didn't have access to the drugs and to the alcohol, his conduct reverted to the very good conduct, the very kind of conduct that the defense's theory of mitigation was all about. They just didn't do the job. And that's what we expect of trial of, that's the minimal expectation of trial lawyers in capital cases, to do a thorough investigation and to, and to have the, all of the evidence at your disposal to make strategic decisions. Here, those, those trial lawyers didn't have that evidence. Um, but that's your assumption. That's, that's your request for a hearing is to find that out. Uh, I certainly am asking for a hearing to be able to, to establish it. You're, you're, you're absolutely right. Judge Loken. Well, you want us, you want us to assume that despite what I just pointed out was some, some inference to the contrary. No, your honor, I'm not asking you to make that assumption. As I, as I, as I argued earlier, we obtained trial counsel's files and trial counsel's files do not contain Mr. Dorsey's disciplinary and behavioral records from South Central Correctional Center, from Callaway County Jail, or from Boone County Jail. So no, trial counsel did not have that information and could not have made a strategic decision. Counsel, I'd like to turn to a different question if I could, but is your request for an evidentiary hearing pursuant to 2254 E2? And if so, does that statute permit an evidentiary hearing here? As I understand it, guilt is not an issue here. We argue that it, that he is entitled to present this evidence at an evidentiary hearing because of the ineffective assistance of post-conviction counsel and the likewise failing to raise this claim precluded the opportunity for, for this to have been, for this, for this record to have been developed at the state court level. And that's what the United States Supreme Court has said is that if you can't, if you can't develop the record at the state court level, then you're entitled to develop that record in federal court. And your, and what case is that? Excuse me, Your Honor, I'm, I'm, I'm blanking. I apologize, Your Honor, but I, I know that there is, that there is United States Supreme Court case law that if you are unable to, oh, in, in Williams versus Taylor itself, when the court is explaining 2254 D2, the court explains that if you can't, if you don't have an opportunity to develop the record in state court, then you can develop the record in federal court. I think that's, that's the case. Okay. Okay. And, and here we made, we made offers of proof to support this claim and those offers of proof were rejected by the district court. And so when the district court made a determination about whether or not to grant the evidentiary hearing, it didn't take into consideration the offers of evidence that we provided. If there are no further questions now, I'll reserve my remaining time for rebuttal. Very good. Thank you, Mr. Van and Mr. Goodwin. Good morning, Your Honor, and may it please the court. Two days before Christmas, Brian Dorsey murdered his cousin-in-law, murdered his biological cousin, raped her, poured bleach over her groin and her midsection, and then stole personal property from the victim. Counsel, this is not a jury argument. Let's get onto the legal issues before us. Your Honor, it's not a jury case. That's, that's correct. Those facts are very important though, because they support the jury's finding of seven aggravating circumstances, and that has to be considered against this new mitigation argument to determine whether or not there's prejudice under Strickland. These, these equivocal prison records, Your Honor, are so weak that they cannot overcome the mitigating circumstances that were presented, or I'm sorry, the aggravating circumstances that were presented to the jury and were found by the aggravating factors. And against that, Mr. Dorsey argues that if a jury had been presented with the prison records, which consists of checklists showing that he did not have conduct violations, that a jury would have, would have imposed a life sentence. And Your Honor, that's simply not the case. The district court's determination that, uh, that Mr. Dorsey was unable to show prejudice and the determination that the, that Mr. Dorsey was unable to show deficient performance on the part of trial counsel is why the district court determined that the claim is insubstantial under Martinez. That determination was correct. Well, the skipper evidence here is more than just a checklist, isn't it? The testimony of various corrections officers and apparently an elected deputy or something along those lines. Uh, not Your Honor. I disagree with that argument from, uh, Mr. Dorsey. The petition when it was pled contained an attachment of, uh, several hundred pages of prison and jail records, only approximately 81 of which are relevant to, uh, the argument. The petition was filed in 2015. The response was filed in 2016. The traverse was filed in 2018. The district court held an oral argument on the question of procedural default. And then three months after that, Mr. Dorsey offered, uh, affidavit, an affidavit from his investigator that purportedly contained the statements from, uh, these officers. So that the, the claim of the, with the expert and the correctional officers was not pled in the petition, was not pled in the traverse and was added belatedly. And I want to go to something Mr. Dorsey's counsel just mentioned. The district court did consider that evidence, uh, in an, in a footnote, the district court explained that it determined that that evidence was cumulative to the prison records that were attached to the petition. Uh, and that it shouldn't, they should not be admitted because they are hearsay, but that even if they were admitted, the district court would still find that the claim was insubstantial under Martinez. That's exactly the right analysis under this court's precedent and under Martinez itself. And it's the right answer. And so those pieces of evidence are out of the case, but even if they weren't your honor, they still don't change the calculus for some of the reasons the courts already mentioned the testimony at trial that the jury heard from the psychologist is cumulative. Uh, if the argument is that Mr. Dorsey only commits these sorts of crimes when he's under the influence of drugs and alcohol, that's exactly the type of information that Mr. Dorsey presented through his friends, family members, his high school football coach, and his expert witness at trial. And the jury didn't find it persuasive because as I began the argument, the facts of the offenses, the state's aggravating case was so strong that that week mitigating evidence was not enough to overcome council. What about Dorsey's argument that skipper creates a professional obligation that applies in all cases, uh, to investigate the client's adjustment to incarceration? What's your response to that? Your honor, this court has expressly rejected that argument at least two times in skipper versus Luber and in Cole versus Roper. Uh, Cole versus Roper is a 2010 eighth circuit case. Uh, I believe, uh, the case before that was a few years older. And in that case, in those cases, this court expressly rejected the argument that skipper imposes a mandatory duty to go out and find this kind of evidence and presented skipper is merely a case about what is and is not admissible in a mitigation case. And trial counsel does not have infinite time to search out every possible lead on every possible piece. The duty to investigate is, is it is an important duty for trial counsel, but it is tempered by the fact that trial counsel never has unlimited time or limited resources, and they must choose where to invest their time. In this case, they wisely chose for mr Dorsey to, uh, to, to advise him rather that he should plead guilty and focus the case on a mercy claim to essentially say, mr Dorsey did these things. He's taken responsibility for these things. He accepts that responsibility and he's asking for mercy. And that's what trial counsel did in this case. And that was a reasonable trial stretch. Counsel, would you agree though, that just because mitigating evidence of good character is introduced, that doesn't necessarily negate a duty to introduce evidence of successful adjustment to incarceration. Those two types of evidence, your honor, are, uh, very similar, but I would say your honor, that there is no case that says there is an affirmative duty to obtain and introduce evidence of good adjustment to incarceration. That's what the, uh, the Cole versus Roper case talks about. There's a duty to investigate. And one of the potential avenues for investigation is to look at that adjustment to incarceration, but there's no duty to do so. And in this case, as I pointed out in the brief, had trial counsel investigated that adjustment to incarceration, the state's attorney would have been alerted to the, to the bad facts in the record and would have been able to use those facts in Dorsey's cross-examination or in their case in chief, or perhaps in rebuttal to undercut his argument that he's accepted responsibility. Counsel, by bad facts, are you referring to his pair of interest in television and board games? Those are some of the facts. Yes, your honor. Other facts indicate, uh, as was mentioned previously, the fact that the department of corrections determined that Mr. Dorsey, uh, did not express remorse over the offense, did not express the need for self-improvement that he defied authority and that he was self-centered. Mr. Dorsey's testimony, uh, in his own defense of the sentencing phase was essentially that he had accepted responsibility. And if any jury that is presented with evidence that the defendant lied during, uh, essentially his argument for mercy, that is going to be devastating for that defendant. Mr. Goodwin, you alluded to an argument and I'm just curious whether it was actually made, and that would have been that, uh, based on the evidence that he's only violent when he's using drugs and alcohol, was the argument actually made that, that in prison, he won't have access to that and therefore, um, should not be violent in the future. Was that argument made? That are the second piece of that, your honor, that argument was not expressly made. I would describe it as a subtext. Uh, you know, in Missouri, juries are instructed that they can use their common sense. And it's a common sense proposition that, uh, inmates are not able to have access to drugs or alcohol in prison. Uh, the defendant's expert witness testified about the connections to the drugs and, and certainly, uh, the, the drug connection to these offenses was before the jury because after all, Mr. Dorsey's family members had taken him in because he owed the drug debt and he'd sold the property to satisfy the drug debt. And so the first part of your question, your honor, you know, was there some sort of connection that was text? The second piece was subtext, if that makes sense, but it's certainly a reasonable, a reasonable inference for the jury to draw that Mr. Dorsey's offenses were connected to drugs and alcohol. And that if he, while he's incarcerated, he won't have access to those. We haven't spoken yet, your honors. And so I'd like to, if there are no questions, additional questions about that piece, we haven't spoken about the proper standard, uh, for whether a claim is substantial or not. Uh, Mr. Dorsey argues that the claim is lower, uh, than merely some merit that it is all the way at the low level of a certificate of appealability. And that's simply not the cases, the case, your honors, uh, Martinez is very clear that a claim must have some merit in order to be substantial. And in fact, Martinez itself says, uh, on pages 15 and 16, that a state can respond to a Martinez type argument by, uh, arguing and proving that the claim is insubstantial, i.e. that it does not have merit. And so the Mr. Dorsey's argument that the district court applied the wrong standard is misplaced. The district court reviewed the underlying claim determined, uh, that it did not have merit because trial counsel rendered, uh, rendered appropriate performance and Mr. Dorsey was not prejudiced and then determined the claim is not substantial. Has any circuit decided that question? Uh, which question your honor? Well, the question of whether the Martinez standard is the same as the standard for granting a certificate of appealability. Mr. Dorsey relies on cases from that, uh, it is a, the standard is certificate of appealability. And this court has recently, and by that, I mean, in the last year said that, uh, some merit must then go on to the next step and mean, uh, that it is debatable among jurists of reason. But this case is this court's prior cases beginning in 2013, do not hold that. And in fact, since, uh, the more recent cases, there's another case in 2021 McLaughlin versus preside that does not hold that. So this court's been pretty clear, uh, from 2013, uh, to present that you can resolve a Martinez claim by looking to see if the underlying claim has merit or does not have merit. And if it is meritless, which this claim is, then the claim is not substantial. This court has done that and then your honor, I also want to turn to another point about the performance that, uh, post-conviction relief council provided post-conviction relief council called dozens of witnesses offered nearly a hundred exhibits over three days. I think it was 16. Wasn't that council? Oh, which is not, which is not does it, which is not dozens. That's a, I'm sorry, your honor. I was confused on another point. You're correct that it was 16, but what, what is true, your honor, is that trial council or that post-conviction relief council put on a significant amount of evidence. And this court has been very clear as has the United States Supreme court that post-conviction relief councils is not deficient. Their performance is not deficient unless the claim that should have been that the allegation is that should have been is plainly stronger than the claims that were actually presented. Mr. Dorsey represented many, if not all of those same claims that post-conviction relief council presented. And this new claim of adjustment to a good adjustment to prison is not plainly stronger than the claims that were actually presented at the post-conviction relief here. And so that's another indication that post-conviction relief council's performance was not deficient because this new claim is not plainly stronger, especially in light of the double-edged sword nature or the equivocal nature of these records. Counsel, I'd like to have you address the issue of whether an evidentiary hearing is available under the statute. I know you briefed that, but what's your response to Dorsey's argument in that an evidentiary hearing is not permitted under 2254E2 because that statute requires that a no reasonable fact finder would have found the defendant guilty of the underlying offense. Mr. Dorsey has pled guilty to the underlying offense, and this is only a sentencing case. So counsel, how do you, how do you deal with Sasser versus Hobson? Sasser, your honor, only looks at the other prong of 2254E2. Sasser only looks at the part of the statute that talks about the diligence of counsel and not the part of the statute that talks about the guilt of the underlying offense. And so in Sasser, this court was not presented with that question. And so that's, that's our primary argument for why Sasser doesn't control here. So what's your, what's your best Supreme Court case for your interpretation? Your honor, the best Supreme Court case on this particular issue is the case that hasn't been decided yet, Shin. The second best case, your honor, is Ross, which is a case about the Prison Litigation Reform Act. And the reason why that's the second best case is because it's a case about statutory interpretation. And this is a question of statutory interpretation that hasn't been squarely presented to the Eighth Circuit before. And I don't want to turn the attention away from that particular question except to point out that when we're talking about an evidentiary hearing, there's really two types of evidentiary hearings that have been kind of merged together in the briefing and in the discussion of this case. One type of evidentiary hearing would be for Mr. Dorsey to present evidence to show that he can satisfy the Martinez requirement and another type of evidentiary hearing would be to prove the underlying claim. And we've talked about those hearings kind of as one hearing together. And of course, the court might in a different case, try to hold, you know, both of those hearings at the same time because some of the evidence of course would overlap. But the important thing to realize for Martinez is Mr. Martinez didn't need an evidentiary hearing in order to establish that he could excuse his procedural default. Mr. Dorsey had ample opportunity to provide the evidence and the records attached to the petition or perhaps even in the traverse and he did not do so until after the district court had held an oral argument on the question of procedural default. And then of course, returning to the beginning of this portion of the argument, the second type of evidentiary hearing is the one that's precluded under the underlying offense is not an issue in this case. Unless there are other questions, I just like to briefly conclude and then return the balance of my time to the court. In this case, your honor, the allegation is that the district court erred when it followed this court's precedent, determined that the underlying claim was not meritorious, that it had no merit and therefore then determined that it was an insubstantial claim under Martinez. That analysis is exactly correct. It follows the precedent that this court has set for years. It follows the text of Martinez and it's correct on the facts of this case. And for those reasons, your honor, I would ask that the court affirm the district court's decision to deny release. Thank you. Thank you, counsel. Mr. Dionne for rebuttal. Thank you, Judge Loken. I want to get back to your question that I had a difficult, I had a hard time remembering the case when you asked me about E2. There's actually a case out of your court, McGehee v. Norris, 588 Fed 3rd 1185, where the court discusses whether or not there's been some preclusion of the opportunity of the petitioner to develop the claim in state court. And the whole point of Martinez is that ineffective assistance of post-conviction counsel precludes the opportunity to develop the claim in state court because of the ineffective assistance. And so both McGehee v. Norris and Martinez, I think, addressed the court's question and I wanted to answer it right up front. The commonwealth cited Skillicorn and Cole as cases where this court has said that there's not an ineffective assistance of trial counsel claim for failing to develop and present good adjustment to prison evidence. Both of those cases, it's really important to note, were decided under the Anti-Terrorism and Effective Death Penalty Act so that the federal court has to defer, frankly, to the state court's legal conclusion unless the state court's legal conclusion is unreasonable. We don't have that situation here. In addition, if you look at the facts in Skillicorn and Cole, in neither of those cases was the petitioner's adjustment to incarceration evidence nearly as good as the adjustment to incarceration evidence here in Mr. Dorsey's case. In Skillicorn, for example, Mr. Skillicorn, I believe, had escaped or had instances of attempts to escape from prison. His disciplinary record was not anywhere near the quality of the disciplinary record that's at issue in this case. The state has argued that time constraints, and I understand that. There certainly are. What we have in this case is that trial counsel and post-conviction counsel both obtained the medical records from the Missouri Department of Corrections. Now, if you have the time to write a letter to request and obtain the medical records from the Missouri Department of Corrections, does it really take much more time to add in that letter, I want all of the records? So trial counsel got the medical records because the trial counsel was trying to present them, wanted to give the medical records to their mental health professional. The trial counsel gave them to Dr. Smith. Post-conviction counsel gave them to the forensic psychiatrist, Dr. Daniel. But in both situations, trial and post-conviction counsel obtained the medical records from the Missouri Department of Corrections, just didn't obtain the disciplinary and behavioral records from the Missouri Department of Corrections. On the issue of whether or not the certificate of appealability standard and the substantiality standard under Martinez is the same, the state has argued that this court has uh doesn't see it that way when in fact the state actually filed a 28-J letter to say that there's an intra-circuit split about that question and cited the cases both in his 28-J letter and in his brief that there is in fact an intra-circuit split on that question. So to characterize it as clear seems problematic to me. I don't I don't think it's an accurate. Counsel, let me just let me just ask you if if the Supreme Court's test is some merit and the district court said I'm applying the test of some merit, then it seems to me this this argument about COA terminology is is a nothing. All right, let me explain why it is. The district court said that there that there was not some merit after doing a full adjudication of the underlying claim. The United States Supreme Court in Buck v. Davis says that is absolutely the wrong thing to do. Now Buck involved a certificate of appealability, not a some merit issue, but since Miller L is cited in in Martinez as as the standard, let's look to what the United States Supreme Court said about that in Buck. In Buck, the U.S. Supreme Court told the Fifth Circuit you made a mistake by fully adjudicating the underlying claim of ineffective assistance of counsel before reaching your conclusion about whether there was some merit to the underlying claim of ineffective assistance of trial counsel. So the United States Supreme Court has already has already educated the lower courts. Counsel, counsel, counsel, I just have if if the if the some merit involves the merits of the underlying claim that wasn't presented, how can you not address the some merit issue under any standard without looking at that question? Was there some merit to the underlying claim? You're right, Judge. You have to look, you have to look at it at some level, but the the level at which you're supposed to look at it at this point is is this debatable among jurists? Is there some reason, wait a minute, could somebody disagree with me about this? Isn't that the standard for the granting of the certificate of appealability, which is different than where we are now? It is the standard for a certificate of appealability, Judge Grunger. It's just not different from where we are now. The United States Supreme Court says in Martinez that the standard for some merit is whether or not it's debatable among jurists of reason. That's why it cites two Martinez does. Martinez doesn't say that you're you're dragging that from a from a C.O.A. Buck case and superimposing it on Martinez. And that's that's a that's a perfectly legitimate argument. But but don't present it as as decided law. No, Judge, that's not that wasn't the argument I was making. So please allow me to clarify. The argument I was making was that in Martinez itself, the United States Supreme Court, when it defines what is substantiality, defines it as submerit and set and cites to Miller versus Cockrell, which is this provides the standard for a certificate of appealability. Now, there are there are panels in this court that have. So this makes it reversible error, freestanding, per se, reversible error, not to not to not to cite Miller, not to say I'm following the Miller standard. No, that's not what I'm arguing, Your Honor. Well, but but the substance of what the court did comply with any standard. If if the court was right on the underlying on the on the trial counsel and effective assistance claim. Respectfully, Your Honor, I think the Supreme Court's decision in Buck strongly suggests that that the duty of the of the federal court is not to do a full merits review of the underlying claim, but to but to look at the underlying claim sufficient to determine whether or not it's debatable among jurists of reason. And if it's debatable among jurists of reason, then there is some merit. To to to establish Martinez cause for the for the procedural default of the ineffective assistance of trial counsel claim. If there are no further questions, I'll just conclude that we believe that an evidentiary hearing is necessary, that Mr. Dorsey has established some merit of his claim of ineffective assistance to trial counsel for failing to develop and present good adjustment to prison evidence. And that there is cause and all of that can be shown at an evidentiary hearing. And that's what needs to happen because there's a genuine issue of there are genuine issues of material fact on those questions that require an evidentiary hearing. Thank you. Very good. Thank you, counsel. Complex issues. They've been thoroughly briefed and argument has been helpful to the court and we'll take the case under advisement.